SOCIETY OF GOOD NEIGHBORS v. MAYOR OF DETROIT.

1. Lotteries—Bingo.

"Bingo" is a game proscribed by the statute relating to lotteries (Const. 1908, art. 5, § 33; Act No. 328, § 372, Pub. Acts 1931).

2. Injunction—Enforcement of Valid Statute.

Enforcement of statute prohibiting lotteries, such as bingo games, may not be enjoined, since the ultimate result would be the nullification of a valid statute (Const. 1908, art. 5, § 33; Act No. 328, § 372, Pub. Acts 1931).

3. Equity—Jurisdiction—Criminal Law.

A court of equity concerns itself with civil rights and has no jurisdiction to aid a party in the violation of a public law, to overrule the policy of the State or interfere with the public duties of any of the departments of government.

4. Same—Pleading—Motion to Dismiss.

Well-pleaded allegations in a bill of complaint, and inferences drawn therefrom, must be taken as true and construed in a light most favorable to plaintiff on motion to dismiss.

---

References for Points in Headnotes

[2] 28 Am. Jur., Injunctions, § 181.
[3] 14 Am. Jur., Courts, § 198; 19 Am. Jur., Equity, § 143.
[4] 41 Am. Jur., Pleading, § 332.
[6, 7] 19 Am. Jur., Equity, § 469.
[6, 7] He who comes into equity must come with clean hands. 4 A.L.R. 44.
[10] 14 Am. Jur., Costs, §§ 23, 91.

5. SAME—VIOLATION OF LAW.
> A right to violate the law can never be conferred by laxity in its enforcement as to others.

6. SAME—MAXIM.
> He who hath committed iniquity shall not have equity.

7. SAME—CLEAN HANDS.
> He who comes into equity must come with clean hands.

8. LOTTERIES—COMMERCIAL AND CHARITABLE LOTTERIES.
> The law draws no distinction between commercial and charitable lotteries, each being *malum prohibitum.*

9. CONSTITUTIONAL LAW — LOTTERIES — EQUAL PROTECTION — DUE PROCESS.
> A refusal to restrain the enforcement of a statute prohibiting lotteries, particularly as to bingo game for charitable purposes, is neither a denial of equal protection of the law nor a deprivation of property rights without due process (U. S. Const. am. 14; Mich. Const. 1908, art. 2, §§ 1, 16; art. 5, § 33; Act No. 328, § 372, Pub. Acts 1931).

10. COSTS—PUBLIC QUESTION—INJUNCTIONS—LOTTERIES.
> No costs are allowed in suit to restrain enforcement of statute prohibiting lotteries, brought by a nonprofit corporation which operated bingo games for charitable purposes, a public question being involved (Const. 1908, art. 5, § 33; Act No. 328, § 372, Pub. Acts 1931).

Appeal from Wayne; Maher (Thomas F.), J. Submitted January 13, 1949. (Docket No. 21, Calendar No. 44,069.) Decided February 28, 1949.

Bill by Society of Good Neighbors, a Michigan nonprofit corporation, against Eugene I. Van Antwerp, Mayor of Detroit, and others to restrain interference with bingo games. Bill dismissed. Plaintiff appeals. Affirmed.

*Davidow & Davidow,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *Nathaniel Goldstick,* Assistant Corporation Counsel, for defendants.

Bushnell, J.    Plaintiff Society of Good Neighbors, a nonprofit corporation, has appealed from an order dismissing its bill of complaint, in which it sought injunctive relief, restraining the mayor, commissioner of police, superintendent of police, and deputy superintendent of police of the city of Detroit "from in any way interfering with the plaintiff in its conduct of any bingo parties or any of its other activities."

It is the claim of plaintiff that for some years it has been operating a charitable organization which renders assistance in emergency cases to all persons regardless of race, color or religion.    It has financed itself by voluntary contributions and operated with the aid of volunteer workers, in addition to about 30 individuals on its pay roll.    According to plaintiff, in 1944, due to increased costs of living and operating expenses, it undertook to augment its income by conducting bingo parties.

It is stated that several years later an instance arose which brought about a prejudiced attitude on the part of the police department towards plaintiff's operations, which developed into an "animus" on the part of defendants, resulting in "a campaign of inquisition" and repeated visits of the police, which plaintiff claims were merely for the purpose of frightening patrons at its bingo games and thereby suppressing its activities.    Later, a grand-jury investigation was instigated and representations were made by defendants to the revenue officers of the Federal government and certain State officers respecting plaintiff's operations.    Plaintiff asserts that many religious, charitable, service, patriotic and other nonprofit organizations are operating

bingo, raffles, and lotteries in the city of Detroit, without being molested by the police, but that plaintiff has been singled out as the sole object of police interference.

After defendants filed their motion to dismiss, plaintiff amended its bill of complaint to include more specific details of the actions of the police, and it alleged that, through its director, it asked that an arrest be made so that the matter could be tested in the criminal courts. It avers that the conduct of its operations is "perfectly legal," and that the threats of the police will amount to a continuing trespass and cause irreparable damage unless restrained by a court order.

The trial judge accepted the allegations of the bill of complaint as true and stated in a filed opinion that the court believed itself to be without jurisdiction to restrain defendants in that plaintiff's operations constituted "a game of lottery, a game of chance. It is gambling." The court was also of the opinion that plaintiff had an adequate remedy at law and entered an order dismissing the bill of complaint.

Article 5, § 33 of the Constitution of 1908, provides:

"The legislature shall not authorize any lottery nor permit the sale of lottery tickets."

In *People* v. *Welch,* 269 Mich. 449, defendants were charged with managing a lottery and aiding and assisting in disposing of merchandise by way of lottery for money and a game of chance. The trial judge quashed an information filed against the defendants, and on appeal by the people the order of the superior court of Grand Rapids was reversed and the cause remanded for further proceedings. It is there said that the operations of Welch and others, in conducting what they termed a "beano"

game, was a violation of section 372 of the penal code, Act No. 328, Pub. Acts 1931 (4 Comp. Laws 1948, § 750.372 [Comp. Laws Supp. 1940, § 17115-372, Stat. Ann. § 28.604]).

Bingo is essentially the same as "beano," "keno," and "lotto," described in the *Welch Case.*

Plaintiff does not contend that the statute just cited is unconstitutional or in any way defective, but argues that it is the victim of a discriminatory enforcement of the criminal law and, as such, is entitled to injunctive relief in a court of equity. It relies strongly on *Yick Wo* v. *Hopkins,* 118 U. S. 356 (6 Sup. Ct. 1064, 30 L. Ed. 220). In that case an ordinance of the city and county of San Francisco provided that no one should "establish, maintain, or carry on a laundry within the corporate limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." It there appears that a large number of licenses had been issued to persons operating laundries under similar conditions and who were not Chinese subjects, but that licenses were refused in every instance to Chinese subjects. This matter reached the supreme court of the United States on a writ of error from a proceeding involving an application for writ of habeas corpus. In discharging the petitioner from custody and imprisonment, the court said, p. 373:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

The ordinance in the *Yick Wo Case* required the exercise of discretion by the licensing authority, and the court found an abuse of that discretion. Furthermore, the business there involved was lawful. Here, the nature of the operation in question is illegal, and the applicable statute leaves no room for the exercise of any discretion as to whom it may affect. Hence, the *Yick Wo Case* is not controlling here.

Should the relief which plaintiff seeks be granted, other operators of charitable bingo games would be entitled to the same relief, and the ultimate result would be the nullification of a valid statute.

A somewhat similar situation arose in *Jackie Cab Co.* v. *Chicago Park District,* 366 Ill. 474, 479 (9 N. E. [2d] 213, 112 A. L. R. 1410), where it was charged that the police were enforcing an ordinance against negro taxicab drivers and not enforcing it against white drivers. The Illinois court said:

"As a general rule, it may be said that equity concerns itself only with property rights and will not intervene for the purpose of restraining the enforcement of a criminal statute. This is true even though the acts of the police department may be performed in an oppressive and unlawful way. 32 C. J., Injunctions, § 411, and cases cited. Such is the rule, also, as to ordinances regulatory in their nature which provide a penalty for violation. * * * The court of chancery is conversant only with questions of property and the maintenance of civil rights. It has no jurisdiction to interfere to aid a party in the violation of a public law, to overrule the policy of the State, or interfere with the public duties of any of the departments of government."

Well-pleaded allegations in a bill of complaint, and inferences drawn therefrom, must be taken as true and construed in a light most favorable to the plaintiff. *Gilmer* v. *Miller,* 319 Mich. 136. Never-

theless, a right to violate the law can never be conferred by laxity in its enforcement as to others. The very foundation of a court of equity is good conscience, and it will not lend its aid by way of the extraordinary writ of injunction to assist law violators. He who hath committed iniquity shall not have equity, *McCredie* v. *Buxton*, 31 Mich. 383, 388, and he who comes into equity must come with clean hands, *Hoff* v. *Hoff*, 48 Mich. 281.

We are not here concerned with other law violators. If peace officers are derelict in their duties as herein charged, we cannot adjudge that complaint within the confines of the instant case. It is enough now to say that the law draws no distinction between commercial and charitable lotteries, each being *malum prohibitum*.

The facts in the instant case are controlled by what is said in *People* v. *Welch, supra,* and the statute and authorities therein quoted and cited.

A refusal to restrain the enforcement of a criminal statute, under the facts here disclosed, is neither a denial of equal protection of the law nor a deprivation of property rights without due process.

Plaintiff has failed to state a cause of action and the order dismissing its bill of complaint is affirmed. A public question being involved, no costs will be allowed.

Sharpe, C. J., and Boyles, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.