**Max H. NELSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 353.

Supreme Court of Alaska.

Jan. 2, 1964.

**934**

J. Glenn Cassity, Anchorage, for appellant.

George N. Hayes, Atty. Gen., John K. Brubaker, Asst. Atty. Gen., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Appellant was convicted of taking a cub grizzly bear in violation of a state game regulation. His main points on this appeal are: (1) that the Board of Fish and Game was not empowered to prohibit the taking of cub bear; (2) that the regulation is void because it is vague and indefinite; (3) that the trial judge erred in denying appellant's offer of proof designed to show an arbitrary enforcement of the regulation; and (4) that the judge erred in allowing a witness to give his opinion as to the age of the bear that appellant killed.

1. *Power of the Board.*

The game regulation in question permits the taking of one brown or grizzly bear of either sex each year, "provided that the taking of cubs or females accompanied by cubs is prohibited." [1] Appellant contends that this prohibition against the taking of cub bear is invalid because beyond the scope of authority conferred upon the Board of Fish and Game by the legislature.

 The legislature has authorized the State Board of Fish and Game to make rules and regulations for game management, protection and propagation.[2] An integral element of any program for the protection and propagation of game is the protection of young animals. A cub bear's instincts for self-preservation have not been fully developed. He is not as wily and as able to fend for himself as an older bear. The killing of bear cubs by man is a relatively simple feat, and if not prohibited would cause an attrition of the bear population which inevitably would lead to their extinction. A regulation which forbids the taking of cub bear is consistent with legislative policy to provide for the protection and propagation of wild game, and is therefore a rightful exercise of the authority of the Board of Fish and Game.

2. *Definiteness of Regulations.*

██ By regulation the Board has defined "cub bear" as meaning "young bear in their first or second year of life." [3] Appellant contends that this regulation and a regulation forbidding the taking of cub bear amount to a criminal prohibition [4] which is so vague and indefinite as to deprive appellant of due process of law.[5]

We disagree with appellant, for in plain language a hunter is told that he may not kill a bear in its first or second year of life. There is nothing vague or uncertain about this. One is not required to guess at what is forbidden; the meaning of the regulations is clear enough.

1. 5 Alaska Adm.Code § 311.02(i), at 439 (1962).

2. AS 16.05.250(7).

3. 5 Alaska Adm.Code § 301.13, at 403 (1962).

4. AS 16.05.900 makes violation of a board regulation a misdemeanor, punishable by fine and imprisonment.

5. It is well established that the essentials of due process of law are violated by enforcement of a statute or regulation which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322, 328 (1926).

■ Appellant argues, however, that the regulation defining cub bear is indefinite because the words "first or second year of life" are subject to different interpretations as to when a bear's life begins, i. e., either at the time of birth, or at the time of conception. This argument is without merit. The regulation is addressed to men of ordinary intelligence who reasonably would be expected to understand it in its common and ordinary sense. The word "life", as it is commonly understood, contemplates conscious existence—a living being. A hunter is concerned with live animals—those which exist in their own right, as contrasted with those which have mere fetal existence. The regulation has obvious reference to young bear in their first or second year of life after birth, and not to any period of life which may exist prior to birth. There is no ambiguity which would cause the regulation to be vague or indefinite in any degree.

■ Appellant complains that enforcement of the regulation deprives him of due process of law because he had no way of knowing that the bear he shot was less than two years old. Admittedly, it is impossible for a hunter who sees a wild bear to ascertain its precise age. But such impossibility is the very reason why the state, in enforcing the regulation, should not be required to prove that the hunter knew or ought to have known that the bear he shot was under two years of age. To require proof of guilty knowledge as a prerequisite to conviction in such a case would mean that the regulation could not be enforced. The prohibition would become meaningless, and the permissible objective of providing for the protection and propagation of bear would be frustrated. In such a case, inability to determine with certainty that the killing of a bear may be a violation of the regulation forbidding the taking of cubs does not result in a denial of due process.[6] An informed hunter will know that the size of a bear is some indication of its age. If he shoots a relatively small animal he has allowed himself little margin for error in his estimate that the bear is more than two years old. The fact that his fate depends on his estimating correctly raises no constitutional difficulty.[7]

3. *Arbitrary Enforcement—Offer of Proof.*

The court excluded evidence which appellant offered for the purpose of showing that agents of the Board of Fish and Game, in applying the bear cub regulation in other instances, had used standards different from those used in appellant's case for determining whether the regulation had been violated. The employment of such tactics by the Board, the appellant asserts, resulted in other hunters, in circumstances similar to those existing in appellant's case, not being charged with violations. Appellant argues that since he was prosecuted and others were not, he was denied equal protection of the laws.

■■ The facts which appellant offered to prove would not show that the difference in application of the regulation as between appellant and other hunters was the result of a deliberate and intentional plan to discriminate against appellant, or was based upon some unjustifiable or arbitrary classification. This would have to appear before there could be a finding of a denial of equal protection.[8] The most that could be said of the evidence offered by appellant is that it might possibly give rise to an inference that there was laxity in the enforcement of the regulation in other cases. This would not constitute a denial of equal protection; it would not be a defense to appel-

6. See United States v. Balint, 258 U.S. 250, 251–252, 42 S.Ct. 301, 66 L.Ed. 604, 605 (1922) ; People v. Plywood Mfg's of Calif., 137 Cal.App.2d Supp. 859, 291 P.2d 587, 592 (1955).

7. Nash v. United States, 229 U.S. 373, 377–378, 33 S.Ct. 780, 57 L.Ed. 1232, 1235–1236 (1913).

8. Oyler v. Boles, 368 U.S. 448, 455–456, 82 S.Ct. 501, 7 L.Ed.2d 446, 452–453 (1962) ; State v. Hicks, 213 Or. 619, 325 P.2d 794, 802–804 (1958).

lant in a prosecution for his violation of the regulation.[9] The evidence offered by appellant was properly excluded.

### 4. Opinion Evidence.

The state's witness, Albert Erickson, testified that a skull which was identified as having come from the bear that appellant killed was from a bear approximately 17 to 19 months of age. Appellant claims that admission of this testimony was error on the ground that Erickson was not qualified to determine a bear's age from examination of its skull.

Erickson holds a master of science degree in fisheries and wild life biology. He testified that he had been employed in the field as a game biologist for 10 years, and had devoted 5 of those years exclusively to research investigation of several bear species, which included examining approximately 300 grizzly bear skulls. He described the method of determining age by an examination and study of tooth eruption sequence in a bear's skull, and said that this was an accepted method based upon recent studies that had been made. He stated that within the limit of the age bracket from the time of birth up to two and one-half years, the age of a bear could be determined quite accurately as to its being within a relatively short age span. He testified that he had passed upon the age of bear skulls in at least 100 animals.

Considering this witness's training and experience, we believe that the trial court was amply justified in finding that he was qualified to give his opinion as to the age of the bear that appellant had killed.

As his final point, appellant contends that the trial court erred in refusing to give a number of instructions he had proposed. We have examined these instructions and find that the court was correct in refusing to submit them to the jury.

The judgment is affirmed.

9. State v. Hicks, supra, note 8; Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308, 310 (1949).