Jerry KINGERY, Appellant,

v.

Emery W. CHAPPLE, Commissioner of the Department of Public Safety, and the State of Alaska, Appellees.

No. 1554.

Supreme Court of Alaska.

Dec. 29, 1972.

25. *Id.* 949–950.

Robert H. Wagstaff, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Sanford M. Gibbs and John A. Reeder, Asst. Attys. Gen., Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

BOOCHEVER, Justice.

During October 1969 the Alaska Department of Public Safety published a notice of proposed regulations governing vehicles on public roadways as required by AS 44.-62.190. The notice included a proposal for mandatory safety equipment on motorcycles. Specifically, the regulations required

that all motorcycles be equipped with two mirrors giving a view 200 feet to the rear, handlebars no higher than 15 inches above the seat or saddle, and either a windshield rising at least 15 inches above the handlebars or approved goggles or face shield to be worn by the driver. The proposed regulations also required that the operator and riders wear protective helmets of specified quality.[1]

Interested parties were invited to submit written statements or appear at a hearing scheduled for November 17, 1969 at the State Capitol Building in Juneau. No one appeared or submitted statements in opposition. The regulations were subsequently approved as proposed.[2] In order to allow motorcyclists time to comply, the effective date of the regulations was extended one year to January 1, 1971.

On December 3, 1970, the appellant Kingery filed a complaint pursuant to AS 44.-62.300 seeking to enjoin the enforcement of the regulations, and requesting a declaratory judgment that the regulations were unconstitutional. A motion for a preliminary injunction was denied. Following trial on the merits, the superior court decided that

absent a showing that the responsible administrative agency had exceeded its authority, this Court cannot exercise its independent judgment in reversing such an administrative determination. There is no evidence that the Department of Public Safety's actions were arbitrary and capricious. I find that the department acted within the scope of its authority in promulgating the subject regulations.

The court also found that the notice requirements of AS 44.62.190 were satisfied.[3]

On appeal Kingery urges that the notice and hearing procedures were defective, that the superior court applied an erroneous test in evaluating the substance of the regulations, and that the regulations are unconstitutional because they are arbitrary and capricious, vague and an invasion of privacy.

AS 44.62.100(a)(3) establishes a rebuttable presumption that the procedural requirements for the promulgation of administrative regulations have been satisfied.[4]

---

1. The Federal Highway Safety Act of 1966 (23 U.S.C. § 402[a]) and United States Department of Transportation regulations (23 C.F.R., Part 204) require that participating states enact legislation providing such minimum safety standards for motorcycles. The Alaska Department of Public Safety adopted the mirror, helmet and eye-protection requirements of the National Highway Safety Bureau, and the handlebar-height requirement of the Uniform Vehicle Code § 11-1305.

2. 11 AAC 04.280–310.

3. AS 44.62.190 specifies:
   *Notice of proposed action.* (a) At least 30 days before the adoption, amendment, or repeal of a regulation, notice of the proposed action shall be
   (1) published in the newspaper of general circulation, or trade or industry publication, which the state agency prescribes;
   (2) mailed to every person who has filed a request for notice of proposed action with the state agency;

   (3) if the agency is within a department, mailed or delivered to the commissioner of the department;
   (4) when appropriate in the judgment of the agency, (A) mailed to a person or group of persons whom the agency believes is interested in the proposed action, and (B) published in the additional form and manner the state agency prescribes;
   (5) furnished the Department of Law together with a copy of the proposed regulation, amendment, or order of repeal for the department's use in preparing the opinion required after adoption and before filing by § 60 of this chapter;
   (6) furnished to all incumbent state legislators.

4. AS 44.62.100 provides:
   *Presumptions from filing.* (a) The filing of a certified copy of a regulation or an order of repeal by the lieutenant governor raises the rebuttable presumptions that
   (1) it was duly adopted;
   (2) it was duly filed and made available for public inspection at the day and hour endorsed on it;

AS 44.62.300 provides that in addition to any other ground, a court may ·find the regulation invalid for a "substantial" failure to comply with the requirements of the Administrative Procedure Act. The published notice of revision of regulations pertaining to motorcycles appeared in three of the largest newspapers in the state, and in areas which include most of the population of the state. While published as a general notice that a comprehensive revision of rules of the road was being considered, a subsection of the notice referred specifically to those safety features on motorcycles which are contested in this case.[5] The publications invited interested parties to obtain a complete copy of the comprehensive revision from either the regional offices of the Alaska State Troopers or from the Department of Public Safety. Critics were not required to travel to Juneau for the public hearings. The notice invited written comments.

Under these factual circumstances and the statutory presumption of validity, the superior court properly found that there was no substantial failure to comply with the requirement of AS 44.62.-200(3) that the notice shall include "an informative summary of the proposed subject". Having made this determination, we must next ascertain whether the superior court applied proper standards in upholding the promulgation of the regulations.

In Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1970) this court unanimously decided that

> when a regulation has been adopted under a delegation of authority from the legislature to the administrative agency to formulate policies and to act in the

---

(3) all requirements of this chapter and the regulations relative to the regulation have been compiled with;

(4) the text of the certified copy of a regulation or order of repeal is the text of the regulation or order of repeal as adopted.

(b) The courts shall take judicial notice of the contents of the certified copy of each regulation and of each order of repeal duly filed.

5. The notice included, in the scope and effect of the regulations, requirements pertaining to "other equipment—including mirrors, windshields . . . motorcycle and scooter requirements concerning goggles, face shields, helmets, handlebars and standards for same."

The principal questioned regulations provide:

13 AAC 04.280. MOTORCYCLE, MOTOR SCOOTER–MIRRORS, GOGGLES, FACE SHIELD AND HELMET. (a) A person may not, on and after January 1, 1971,

(1) operate a motorcycle or motor scooter that is not equipped with a mirror on each side of the handlebars. The two mirrors shall be located so as to give the driver a complete view of the highway for a distance of at least 200 feet to the rear of the motorcycle or motor scooter;

(2) operate a motorcycle or motor scooter that does not have a windshield which rises at least 15 inches above the handlebars unless he wears goggles or a transparent face shield meeting the requirements of § 300 of this chapter;

(3) operate or ride upon a motorcycle or motor scooter unless he wears on his head a protective helmet meeting the requirements of § 300 of this chapter. The helmet shall be equipped with either a neck or chin strap which shall be fastened securely while the motorcycle or motor scooter is in motion and which shall be reflectorized so as to be visible from all distances between 600 and 100 feet.

(b)(a)(2) and (3) of this section do not apply to a person riding with an enclosed cab.

13 AAC 04.290. MAXIMUM HEIGHT FOR HANDLEBARS. On and after January 1, 1971, a person may not operate a motorcycle or motor scooter on which the handlebars or grips, at their highest point, are more than 15 inches higher than the seat or saddle for the operator.

13 AAC 04.300. HELMET, GOGGLES AND FACE SHIELD STANDARDS. (a) The protective headgear or helmet required to be worn by a person riding on or operating a motorcycle or motor scooter as provided by §§ 280 and 285 of this chapter shall be manufactured to meet the standards provided by U.S. Standards Institute Safety Code Z 90.1–1966.

place of the legislature, we should not examine the content of the regulation to judge its wisdom, but should exercise a scope of review not unlike that exercised with respect to a statute.

.    .    .    .    .    .

Thus, where an administrative regulation has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation, we will review the regulation in the following manner: First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

The two standards whereby it must be ascertained whether the agency acted within its "scope of authority" and in a "reasonable and not arbitrary" manner are the standards which the superior court applied in the instant case. The refusal of the superior court to substitute its judgment for that of the administrative agency as to the efficacy of the regulation is in accord with this court's statement in Kelly v. Zamarello, *supra,* that the "wisdom" of a regulation is not a subject of review.

■ AS 28.05.030(a) specifically authorizes the Commissioner of Public Safety to adopt regulations governing rules of the road, the operation of vehicles on the roadways, and equipment to be carried on such vehicles. We interpret this power as including the regulation of safety apparel and the regulation of motorcycle construction insofar as such regulations are reasonable and do not violate constitutional rights of the individual. Hence, we do not find that the subject regulations exceed the scope of authority vested in the Commissioner of Public Safety by the legislature to ensure safety on public roads.

■■ We also agree with the decision of the trial court that the regulations are reasonably related to the purpose to be achieved. At the outset we find that the regulations are designed for the safety of the public traveling the highways and not merely for the personal safety of the motorcycle operator.[6] We take judicial notice of the very real possibility that a stone thrown by a passing vehicle, a flying insect or other foreign objects might injure or distract the motorcycle operator, causing him to careen out of control and collide with other vehicles using the roadway. Helmets, face shields, goggles and windshields act as deflectors to prevent such injury or distraction. Testimony at trial indicated that windshields prevent body fatigue and that the limited height of handlebars prevent loss of circulation and arm fatigue, thus ensuring better control of steering. While vibrations of the vehicle may cause blurring of objects viewed through the required mirrors, there is no evidence that such vibrations prevent the operator from discerning that there is some object approaching from the rear. The mirror, helmet and eye protection requirements were adopted from the suggested standards of the National Highway Safety Bureau, and the handlebar-height requirement is taken from the Uniform Vehicle Code.

■■ While in most cases the plaintiff carries the burden of presenting a prima facie case, the burden of proving the negative of a public-protection purpose raises special problems for the individual chal-

---

6. Because of the compelling state interests in providing for safety of the traveling public, we are not confronted with an invasion of privacy issue such as was present in Breese v. Smith, 501 P.2d 159 (Alaska 1972).

lenger of administrative regulations.[7] Hence we conclude that in such cases the state should be required to come forward with at least prima facie evidence that such a reasonable relation to purpose exists before the burden shifts to the complainant. In this case the experienced cyclists introduced as witnesses by the state did establish such a prima facie case, and we cannot conclude that the witnesses of the appellant offered such rebuttals that the decision of the superior court was erroneous.[8] We agree with the holdings of the vast majority of jurisdictions that the regulations in question bear a reasonable relation to the purpose of protecting the public, and hence are not a violation of the police power of the state.[9]

■ We also find that the regulations are sufficiently specific to withstand the attack of vagueness by the appellant. As with the regulation upheld by this court in Nelson v. State, the presently contested regulation "is addressed to men of ordinary intelligence who reasonably would be expected to understand it in its common and ordinary sense." [10] While the termini for measuring the 15-inch height of the handlebars are not specified as particular points on the handlebars and on the seat or saddle, we do not feel that there is such an inexactitude as warrants voiding of that regulation at this time.[11]

The appellant also urges that the 200-feet rear visibility requirement [12] is vague because the regulation does not indicate whether the measure occurs when the cycle is running or when it is parked. He notes that vibrations created by a cycle in operation limit rear visibility through a mirror. But the fact of vibration and blurring need not affect the distance of vision to the rear. It only affects the clarity of outlines of the object viewed. The regulation is concerned to ensure that the driver has placed his mirrors at such a distance and angle as to permit vision 200 feet behind him, whether or not that image is blurred by vibrations. Hence it is unimportant whether the vehicle be parked, idling or moving when the distance measure is taken.

Finally, the appellant contends that the standards of quality for helmets and face wear are vague because the regulations incorporate standards by reference to the United States Standards Institute Safety Code, and that these standards are unknown to the average layman.[13] However,

7. Note, Constitutional Law—Police Power, 67 Mich.L.Rev. 360, 370 (1968).

8. E. g., Palfy v. Rice, 473 P.2d 606, 609 (Alaska 1970) and citations at n. 3 therein.

9. E. g., Love v. Bell, 171 Colo. 27, 465 P.2d 118 (1970); State v. Anderson, 275 N.C. 168, 166 S.E.2d 49 (1969); Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377 (1969); State v. Fetterly, 254 Or. 47, 456 P.2d 996 (1969); State v. Laitinen, 77 Wash.2d 130, 459 P.2d 789 (1969); State v. Odegaard, 165 N.W.2d 677 (N.D. 1969); Ex parte Smith, 441 S.W.2d 544 (Tex.Cr.App.1969); State ex rel. Colvin v. Lombardi, 104 R.I. 28, 241 A.2d 625 (1968); Commonwealth v. Howie, 354 Mass. 769, 238 N.E.2d 373 (1968), cert denied, 393 U.S. 999, 89 S.Ct. 485, 21 L.Ed.2d 464; Everhardt v. New Orleans, 253 La. 285, 217 So.2d 400 (1968). Cf. State v. Lee, 51 Haw. 516, 465 P.2d 573 (1970). Contra, People v. Fries, 42 Ill.2d 446, 250 N.E.2d 149 (1969);

American Motorcycle Ass'n v. Davids, 11 Mich.App. 351, 158 N.W.2d 72 (1968). See generally Note, Constitutional Law—Due Process—Statute Requiring Motorcyclist to Wear Crash Helmet is Unconstitutional, 82 Harv.L.Rev. 469 (1968).

10. Nelson v. State, 387 P.2d 933, 935 (Alaska 1964).

11. The Department of Public Safety might revise that regulation to include a point-to-point measure of the 15 inches, thus precluding the possibility of a judicial contest at some time in the future.

12. Footnote 5, supra.

13. The appellant also contends that the standards are unconstitutional as a delegation of authority to a private organization. However, we do not find such a delegation. Rather the Department of Public Safety adopted the particular helmet requirement of the United States Institute in effect in 1968 as an embodiment of its own regulation. No power to revise the

a footnote to the subject regulation states that the code of the United States Standards Institute can be obtained from the address of the Institute provided in that footnote.[14]

In the abstract posture of this suit we do not find a violation of due process resulting from inability to ascertain the standard adopted by reference.[15] We suggest, however, that agencies of the state should also make such standards available to the public at regional offices in the same manner that AS 29.45.010 requires that municipal corporations file codes adopted by reference with the office of the clerk for the inspection and use of the public. Such a practice would ensure that the individual not be deprived of his due process right to know the status of laws and regulations affecting him.[16]

The decision of the superior court is affirmed.

standard as a regulation is vested in the private organization. *Cf.* Agnew v. City of Culver City, 147 Cal.App.2d 144, 304 P.2d 788, 796–797 (1956).

14. 13 AAC 04.300.

15. "[D]eclaratory relief will be withheld when declarations are sought concerning hypothetical . . . questions. . . . " Jefferson v. Asplund, 458 P. 2d 995, 999 (Alaska 1969).

16. *Cf.* Agnew v. City of Culver City, 147 Cal.App.2d 144, 304 P.2d 788, 795 n. 10 (1956).